MICHELLE BURROWS OSB 86160
Attorney at Law
420 SW Washington Ste. 300
Portland OR 97204
Michelle.r.burrows@gmail.com
503/241-1955
503/241-3127 fax

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### Portland Division

| | | |
|---|---|---|
| MELISSA VAN PATTEN, Person Representative | ) | |
| For the Estate of Melinda Van Patten, Melissa | ) | No. |
| Van Patten and second daughter | ) | COMPLAINT |
| | ) | |
| v. | ) | Civil Rights: substantive due |
| | ) | process, familial loss |
| Deputy Leach, Deputy Stoneberg, Deputy | ) | |
| Purvis, WASHINGTON COUNTY, by and | ) | Jury Trial demanded |
| the Washington County Sheriff's Office | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, by and through their attorney, Michelle Burrows, bring this Complaint herein

and state and allege as follows:

## INTRODUCTORY STATEMENT

### 1.

This action is filed by Plaintiffs under 42 U.S.C. § 1983under the 14th Amendment for

events occurring on April 26, 2013 in which Washington County deputies responded to a

domestic violence call involving Melissa Van Patten and her then husband. The officer knew of

previous domestic violence calls between the two and on this date knew that Mr. Van Patten had

assaulted his wife but failed to arrest him as is mandatory under Oregon law. As a result of their

failure to protect the victim of domestic violence Mr. Van Patten shot and killed Mrs. Van Patten that evening.

2.

This court has jurisdiction over Plaintiffs' claims of violations of federal Constitutional Rights under 28 U.S.C. §§ 1331 and 1343.

3.

Venue is proper under 28 U.S.C. § 1391(b), in that one or more of the defendants reside in the District of Oregon and Plaintiffs' claims for relief arose in this district.

4.

The court has jurisdiction over Plaintiff's pendent state law claims under 28 U.S.C. § 1367.

5.

Plaintiffs are entitled to their attorney fees pursuant to 42 U.S.C. 1988.

THE PARTIES

6.

Melinda Van Patten, the deceased was living in Washington County at the time of her death. She was married to Kenneth Van Patten. Melissa Van Patten is the daughter of Melinda and Kenneth Van Patten.

7.

Deputy Leach and Stoneberg were certified police officers and employed by the Washington County sheriff's office. They were both acting under color of law.

8.

Deputy Purvis was a reserve officer at the time of the incident and was acting under color of law at the time of the shooting.

9.

Washington County was a municipal subdivision of the State of Oregon.

GENERAL ALLEGATIONS

10.

Melinda and Kenneth Van Patten had been married 30 years at the time of the shooting. They were still living together at the time of the shooting.

11.

On the morning of May 26, 2013, Nancy Amrein, a  neighbor and friend of Melinda Van Patten was speaking to Ms. Van Patten when she heard what appeared to be someone attacking Melinda Van Patten. Ms. Amrein dialed 911seeking help for Melinda. Ms. Amrein had witnessed previous attacks by Kenneth on Melissa.

12.

Ms. Amrein told the 911 operator that, while on the phone with Melinda, she suddenly heard Melinda's pleas of "Stop hitting me"; "Don't hit me", while Ken was heard in the background yelling to Melinda, "Shut up, bitch!" Then, the phone went dead.

13.

In her accounting to the 911operator Ms. Amrein made authorities aware that Mr. Van Patten dealt with guns as a business and that there were firearms in the house. She told the operator that this  was not the first time Mr. Van Patten had assaulted Melinda and that Melinda had suffered several other attacks from her husband, some of which had been reported to the police before. Ms. Amrein specifically told 911 operator that Kenneth was "not stable" and that he had been abusive for a long time. All the information conveyed to the 9-1-1 operator was made available to the responding law enforcement officers.

14.

The 911 operator dispatched Washington County Sheriff's deputies Stoneberg and Leach, and Reserve Deputy Purvis to 5355 SW River Road in Hillsboro to respond to the domestic violence call. The operator confirmed to the deputies that there were prior domestic disturbance calls to that address and that there were firearms at the house. The operator also advised the officers that Mr. Van Patten had been assaulting his wife.

15.

There had been to at least two, well documented prior domestic interventions by the same Washington County Sheriff's Office to the Van Patten's home with allegations Mr. Van Patten was assaulting his wife.

16.

On the night of March 16, 2013, at 11:15pm, Melinda Van Patten called 911 scared because she heard a loud crash from Kenneth's room. When she got to his room Kenneth was loading a two-shot Derringer pistol. He looked at her, and said: "Now do I have your attention?" A house guest told police that he heard Kenneth tell Melinda: "You better get out of here."

17.

In a call to 9-1-1 on March 16 Melinda communicated her fears to the dispatcher and said that she had left the premises immediately to an undisclosed location. The house guest also told officials that leaving the premises immediately sounded like a good idea. Mr. Van Patten told responding officers that he was just frustrated over marital issues and was loading his gun to leave to his beach house and sleep in the car. The deputies left the house without arresting anyone and did no further follow up.

18.

On April 26, 2013, Melinda Van Patten called 911 again to report that her husband was angry and abusive over allegations of infidelity. These officers knew that Mr. Van Patten has assaulted Mrs. Van Patten

Washington County Deputies Leach, Stoneberg and Reserve Deputy Purvis all investigated the allegations of domestic violence on May 26, 2013 call. Reserve Deputy Purvis observed that Melinda was visibly shaken and crying and  told her that Kenneth was very angry and "mentally unstable" over Melinda's final decision of moving forward with a divorce. Melinda Van Patten told Deputy Purvis and Deputy Stoneberg that "she was afraid of her husband".

19.

The deputies asked Kenneth if he would be willing to leave the house. He refused and told officers he was going to take a nap. They then turned to Melinda, and suggested that she leave the house. Still, they did not arrest Kenneth Van Patten. They did not seize his weapons nor did they make sure Melinda Van Patten was safely away from the house.

20.

The next day, on May 27, 2013, Reserve Deputy Purvis was advised that later that night Mr. Van Patten shot and killed his wife, attempted to kill the roommate and then shot himself. She wrote an "amendment" to her earlier reports noting that Mrs. Van Patten was upset when the officers declined to arrest Kenneth and told Purvis "remember this face, because the next time you see it I will be dead". There is no explanation for why Purvis wrote the supplemental report nor why none of the officers failed to arrest Van Patten.

21.


After the officers left the residence, Kenneth and Melinda continued with  a heated argument that Memorial Day evening, while preparing a barbecue dinner. The roommate heard Melinda heard screaming "No, Ken, Don't!" Two loud gunshots followed.

22.

Kenneth went out looking for the house guest and shot at him twice, hitting him once.

Kenneth then returned to the bedroom where Melinda was laying, wounded and bleeding. He reloaded his Colt 45 revolver and fatally shot her once more at point blank. He then stood in front of Melinda's dead body, and killed himself with a single shot to head.

23.

Oregon law ORS 133. . . . set out parameters of the statute

24.

Officers are trained to arrest any person they suspect of being the aggressor in a domestic violence situation. This is a mandatory duty imposed on law enforcement and is taught repeatedly to all officers.

25.

Something about the status and duties of reserve officers

26.

The law enfocements officers named herein had a mandatory duty to arrest Mr. Van Patten when the allegations of his abuse of his wife were known. These officers had knowledge of the other calls for service at the residence and were aware of the claims of Melinda Van Patten that her husband had attacked her and that she was afraid of him. Her blunt fear as expressed to the officers was that he was going to kill her and was unstable.

FIRST CLAIM FOR RELIEF; Individual Defendants

Substantive Due Process—14th Amendment

27.

The rights protected under the 14th Amendment due process clause bars certain government actions regardless of the fairness of the procedures used to implement them and the amendment is intended to prevent government officials from abusing their power or employing it as an instrument of oppression. The 14th Amendment protects individuals from infringement on their life, liberty or property without due process.

28.

Individuals have the right to expect that law enforcement when called upon take actions to protect them from harm, particularly, and especially when there is a special duty imposed on the police officers to do so. In this instance the State of Oregon has imposed a special duty on law enforcement to protect the victims of domestic violence with the understanding that these cases often involve highly volatile and dangerous situations.

29.

Constitutional rights can and are defined by existing state, federal and administrative laws. In this instance the rights victims of domestic violence are well established and create expectations and rights of the public to be free from undue harm, deliberate indifferent conduct which shocks the conscience resulting in death and physical injury

30.

The substantive due process rights of the 14th Amendment protects against governmental arbitrary takings, and those actions which shock the conscience or are so brutal and offensive that they do not comport with traditional ideas of fair play and decency or interfere with rights implicit in the concept of an ordered liberty.  It is said to protect against violations by government officials, which rise to deliberate decisions to deprive a person of life, liberty or property.

31.

The actions and inaction of Defendants jointly and severally resulting in the failure to arrest Mr. Van Patten were intentional and without justification and in violation of existing statutory duties.  The actions of Defendants violates the very concept of decency, shocks the conscience and were deliberate actions in violation of the 14th Amendment. The actions by defendants in failing to adhere to legal standards and disregarding the protected rights of the

victims of domestic violence to be free from deliberately indifferent governmental actions placed the entire community in danger from actions which predictably lead to death or serious injury.

32.

Defendants' conduct was well defined by law as noted above and each defendant knew or reasonably should have known that their conduct was well below the standard of law described herein

33.

As a result of these Constitutional violations, Plaintiff Melinda Van Patten was forced to remain at risk from her violent husband with access to weapons and had expressed his intent to harm her. The failure of the officers to detain, arrest or otherwise intervene with Kenneth Van Patten caused the decedents' death and assault on other members of the public. The extent of Plaintiffs' damages will be more fully proven at trial.        .