IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**MELISSA VAN PATTEN,** person
representative for the estate of Melinda
Van Patten,

        Plaintiff,

    v.

**DEPUTY LEACH, LEANNE
STONEBERG, MELINDA PURVIS,
WASHINGTON COUNTY,** by and for
the Washington County Sheriff's Office,

        Defendants.

Case No. 3:15-cv-0891-AC

OPINION AND ORDER

---

ACOSTA, Magistrate Judge:

*Introduction*

On May 26, 2013, defendants Washington County Sheriff's Office Deputies Dylan Leach and Leanne Stoneberg, and Washington County Sheriff's Office Reserve Deputy Melinda Purvis (collectively "Defendant Officers") responded to a domestic violence call involving Melinda Van Patten and Ken Van Patten. Defendant Officers ultimately decided not to arrest Mr. Van Patten.

PAGE 1 – ORDER AND OPINION

The next day, Mr. Van Patten shot and killed Ms. Van Patten and then killed himself. Melissa Van Patten, one of the daughters of Ken and Melinda Van Patten ("Plaintiff"), brings this lawsuit on behalf of Melinda Van Patten's estate alleging Fourteenth Amendment Due Process Clause violations under 42 U.S.C. § 1983 and state law claims. Defendant Officers and Washington County (collectively "Defendants") move for summary judgment on all of Plaintiff's claims.

Defendants' motion is granted with respect to plaintiff's Due Process Clause claim. Plaintiff dismissed the *Monell* claim at the September 12, 2016 oral argument on Defendants' motion for summary judgment. The court retains jurisdiction of Plaintiff's supplemental state law claims and denies Defendants' motion for summary judgment on those claims.

*Background*

Between March 16, 2013, and May 26, 2013, police responded to three 911 calls reporting domestic disturbances involving the Van Pattens. On May 27, 2013, the day after the last 911 call, Mr. Van Patten murdered Ms. Van Patten and then committed suicide.

I. Events Prompting This Lawsuit.

On the morning of May 26, 2013, the Van Pattens' next-door neighbor Nancy Amerin called 911. (Decl. of Diego Conde in Supp. of Resp. to Mot. for Summ. J. ("Conde Decl."), Ex. 23, p. 2, Dkt No. 36-24). Ms. Amerin reported she had been talking with Ms. Van Patten on the phone "and we suddenly got disconnected. And her husband has been very violent lately." (*Id.*). Ms. Amerin repeatedly told the 911 operator she was "very concerned." Ms. Amerin stated Mr. Van Patten was "in the background" and "he was hitting her and unplugged the phone." (*Id.* at p. 3). She also reported Mr. Van Patten had guns and sold guns on Ebay. *Id.* In response to the 911 operator's question, "you said he – he is increasing his behavior," Ms. Amerin replied, "yes." (*Id.*). The 911 operator stated, "he's violent? Okay" and Ms. Amerin responded, "yes." (*Id.*). When

asked what she heard in the background, Ms. Amerin said, "we were talking about canning . . . all of a sudden, he says – she started screaming, and he started hitting, and the phone became undone." (*Id.* at p. 4). Ms. Amerin added her opinion that Mr. Van Patten "was not stable" and he had "pretty much been abusive." (*Id.* at p. 5).

Defendant Officers were dispatched to respond to Ms. Amerin's 911 call. (Conde Decl., Ex. 22, p. 3, Dkt No. 36-23). Reserve Deputy Purvis and Deputy Stoneberg wrote the Sheriff's Office Report. (*Id.*, p. 1). The Report's summary states "I was dispatched to a verbal domestic . . . a neighbor called into [sic] report that she when she heard [sic] yelling between Malinda [sic] and her husband. I contacted Malinda [sic] and her husband . . . and found that no physical violence occurred." (*Id.*). The Report's narrative reflects "[t]he neighbor told dispatch she heard Malinda [sic] say 'stop hitting me.'" (*Id.*).

The Report also states that when the Defendant Officers arrived, they found Ms. Van Patten outside in her driveway "visibly shaken and crying" and that Mr. Van Patten was "in the house and very angry and 'mentally unstable.'" (*Id.*). Defendant Officers went inside the house and interviewed Mr. Van Patten. (*Id.*). Mr. Van Patten told Defendant Officers he and Ms. Van Patten had argued the previous night because, after an attempt to "work things out," Ms. Van Patten "told him she wanted a divorce." (*Id.*). Mr. Van Patten also told Defendant Officers that earlier in the week he had walked in and found the Van Patten's house guest "in bed on top of his wife." (*Id.*). Mr. Van Patten stated he "believed that [the house guest] and his wife were having an affair." Finally, Mr. Van Patten stated Ms. Van Patten told him the previous evening that she "was willing to stay one more night in his bed but after that she was not going to do this anymore." (*Id.*). Mr. Van Patten admitted "this upset him." (*Id.*)

PAGE 3 – ORDER AND OPINION

When Defendant Officers went back outside to talk to Ms. Van Patten, she told them "she was afraid of her husband." (*Id.*). Ms. Van Patten denied any physical violence, stating Mr. Van Patten had not hit her or shoved her in any way and that he did not try to hit her with his car. (*Id.*). The Defendant Officers asked Mr. Van Patten to leave, but he refused. (*Id.*) The Defendant Officers gave Ms. Van Patten the keys to the Van Pattens' car so that she could leave. (*Id.*) Ms. Van Patten took the keys but "did not agree to stay or go." (*Id.*). The Defendant Officers' attempts to contact Ms. Amerin by phone were not successful. (*Id.*). Ultimately, the Defendant Officers "found no physical violence occurred" and did not arrest Mr. Van Patten. (*Id.*).

On the night of May 27, 2013, Reserve Deputy Purvis prepared a Supplemental Report. (Conde Decl., Ex. 29, p. 3, Dkt No. 36-30). The Supplemental Report stated Deputy Purvis recalled "another statement" Ms. Van Patten made to her during the May 26, 2013 investigation. After Deputy Purvis told Ms. Van Patten the Deputy had "no evidence of other crimes being committed," Ms. Van Patten said, "[r]emember this face, because the next time you see it I will be dead." (*Id.*).

II. ORS 133.055.

An Oregon statute mandates the arrest of an alleged or potential assailant when a police officer responding to a domestic violence call "has probable cause to believe that an assault has occurred between family members" or "to believe that one such person has placed the other in fear of imminent serious physical injury." ORS 133.055 (2011). The statute states in relevant part:

> [w]hen a peace officer responds to an incident of domestic disturbance and has probable cause to believe that an assault has occurred between family or household members, as defined in ORS 107.705 [definitions for ORS 107.700 to 107.735], or to believe that one such person has placed the other in fear of imminent serious physical injury, the officer *shall* arrest and take into custody the alleged assailant or potential assailant.

ORS 133.055(2)(a) (emphasis added).

PAGE 4 – ORDER AND OPINION

*Legal Standard*

At summary judgment, the moving party bears the initial burden of pointing out the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden is met by showing an absence of evidence to support the non-movant's case. *Id.* In order to defeat summary judgment, the non-moving party must then set forth "specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotations and citation omitted). In determining whether there is a genuine issue for trial at summary judgment, the court views the record in the light most favorable to the non-moving party. *Matsushita*, 475 U.S. at 587. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* (quotations and citation omitted).

*Discussion*

I. The Estate's Substantive Due Process Claim.

The Fourteenth Amendment to the United States Constitution provides that a State shall not "deprive any person of life liberty, or property without due process of law." Amdt. 14, § 1. Through 42 U.S.C. § 1983, Congress created a federal right of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and law." Plaintiff claims Defendant Officers acted with deliberate indifference and deprived Melinda Van Patten of her life without due process in violation of her rights under the Fourteenth Amendment when they failed to arrest Ken Van Patten or otherwise intervene in order to protect her from a risk of injury or death of which they knew or should have known. Plaintiff further alleges ORS 133.050 imposes a special statutory duty on law enforcement officers to protect victims of domestic violence. Defendants assert summary judgment is appropriate on Plaintiff's constitutional claims because the substantive

PAGE 5 – ORDER AND OPINION

component of the Due Process Clause did not require Defendants to protect Ms. Van Patten's life, liberty, or property from invasion by her husband.

   *A. The Due Process Clause does not require the state to protect citizens from each other.*

In *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189 (1989), a case with "undeniably tragic" facts, the Supreme Court held the Due Process clause does not "require the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Id.* at 195. In *Deshaney*, child protective services failed to protect a child from beatings by his father which left him severely brain damaged. *Id.* at 191-93. In affirming the trial court's grant of summary judgment, the *Deshaney* Court noted its decisions have "recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* at 196. The Due Process Clause protects citizens from "unwanted *government* interference . . . [but] it does not confer an entitlement to such governmental aid as may be necessary to realize all the advantages of that freedom." *Id.* (emphasis in original). Accordingly, Defendants' alleged failure to protect Melinda Van Patten from being murdered by her abusive husband does not constitute a due process violation absent some special relationship entitling her to adequate protective services. *Id.* at 197 ("As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause").

   *B. Special relationships created by statutes that impose an affirmative obligation on the state to provide adequate protective services.*

Plaintiff argues *DeShaney's* general bar to constitutional claims against the state for harms inflicted by a third party does not apply here because ORS 133.055 creates a special relationship between law enforcement officers and victims of domestic violence. According to Plaintiff, the

PAGE 6 – ORDER AND OPINION

special relationship created by ORS 133.055 creates an affirmative obligation to provide domestic violence victims such as Melinda Van Patten with adequate protective services. This argument fails in light of both *DeShaney* and the Supreme Court's decision in *Town of Castle Rock, Colo. V. Gonzales*, 545 U.S. 748 (2005).

In *DeShaney*, the Court recognized a duty to provide adequate protective services can arise out of certain special relationships the state has with particular citizens. *DeShaney*, 489 U.S. at 198-200. The Court noted, however, the special relationships that create an entitlement to due process protection arise "not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom." *Id.* at 200. Where the state is aware of the dangers that a citizen faces in the "free world" but neither played any part in their creation nor did anything to render the citizen more vulnerable, the state has no constitutional duty to protect the citizen. *Id.* at 201. In other words, the special relationship stems not from the state's knowledge of a citizen's vulnerability but instead from limitations or burdens the state has imposed on the citizen.

Viewed in a light most favorable to Plaintiff, ORS 133.055 is the Oregon Legislature's expression of its intent to help domestic violence victims. Interpreted by *DeShaney*, however, this expression of intent did not create a special relationship between Defendant Officers and Ms. Van Patten. *DeShaney*, 489 U.S. at 200 (affirmative duty to protect does not arise from state's intent to help a citizen). Moreover, Defendant Officers placed no limitations on Ms. Van Patten's liberty, played no part in the creation of any danger to her, and did not take any action to more her more vulnerable.

The undisputed facts viewed in a light most favorable to Plaintiff establish the Defendant Officers were aware of the danger that Melinda Van Patten faced from her husband, whom they

knew had a recent history of acting erratically and engaging in violence toward her, had access to guns, and of whom she had a genuine fear, but this knowledge does not give rise to any special relationship. *Id.* at 200 (affirmative duty to protect does not arise from knowledge of individual's predicament). The facts show Defendant Officers left Ms. Van Patten in exactly the same position she would have been in had her neighbor never made the 911 call on the morning of May 26, 2013. Even with the hindsight perspective of Ms. Van Patten's murder the next day, these facts do not give rise to a special relationship entitling Ms. Van Patten to protection under the Fourteenth Amendment's Due Process Clause.[1]

Similarly, the Supreme Court's holding in *Castle Rock* supports a conclusion that ORS 133.055 did not create a special relationship between Defendant Officers and Ms. Van Patten that entitled her to due process protections. Although *Castle Rock* involved a procedural due process claim based on a protected property interest in the enforcement of the terms of a restraining order, its holding is still instructive as to Plaintiff's substantive due process claim.[2] *See, e.g. Castle Rock*, 545 U.S. at 769 ("In light of today's decision and that in *DeShaney*, the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations").

In *Castle Rock*, the mother of three children alleged the town violated the Due Process Clause when its police officers failed to properly respond to her repeated requests over the course

---

[1] Plaintiff appears to argue the Oregon Supreme Court's decision in *Fazzolari v. Portland Sch. Dist. No. 1J*, 734 P.2d 1326 (1987), supports recognizing a special relationship between law enforcement and Ms. Van Patten. The court rejects this argument. *Fazzolari* based its finding of a duty of care on the "special duty arising from the relationship between educators and children entrusted to their care." *Id.* at 1337. Here, no special relationship existed between Defendant Officers and Ms. Van Patten that would give rise to any duty of care.

[2] In *Castle Rock*, the trial court rejected the mother's substantive due process claim and the court of appeals affirmed. *Castle Rock*, 545 U.S. at 754-55.

PAGE 8 – ORDER AND OPINION

of a day that they enforce her restraining order that her estranged husband had violated by taking their three daughters without permission. 545 U.S. at 751-54. Later that night, the estranged husband arrived at the police station and opened fire with a semi-automatic handgun. *Id.* The police shot back, killing him, and then found the bodies of all three of his daughters in the cab of his pickup truck, all of whom he had murdered. *Id.* at 754. The Tenth Circuit found the mother stated a cognizable Fourteenth Amendment claim because she had a "protected property interest in the enforcement of the terms of her restraining order," and the town deprived her of due process because the police made no effort to enforce and protect her interests in the restraining order. *Id.* at 754-55.

The Supreme Court reversed the Tenth Circuit, concluding the mother did not for the purposes of the Fourteenth Amendment have a property interest in the enforcement of the restraining order against her estranged husband. *Id.* at 768-69. The Court found, despite the mandatory language in the relevant Colorado statute, enforcement of a restraining order was not truly mandatory. *Id.* at 760. The Court noted "[a] well established tradition of police discretion has long coexisted with apparently mandatory arrest statutes" and a "true mandate of police action would require some stronger indication from the Colorado Legislature than 'shall use every reasonable means to enforce a restraining order.'" *Id.* at 760-61 (internal citations omitted). The Court further stated, "[e]ven if we were to think otherwise concerning the creation of an entitlement by Colorado, it is by no means clear that an individual entitlement to a restraining order could constitute a 'property' interest for purposes of the Due Process Clause." *Id.* at 766. In particular, the Court stated that the indirect nature of the benefit that a third party might receive from having someone else arrested for committing a crime was likely fatal to a cognizable procedural due process claim. *Id.* 766-68.

PAGE 9 – ORDER AND OPINION

Like the Colorado statute at issue in *Castle Rock*, the language in ORS 133.055 appears mandatory in that it states an officer "*shall*" arrest an alleged or potential assailant when probable cause is present but is not "truly" mandatory. *Castle Rock*, 545 U.S. at 760 ("We do not believe that these provisions of Colorado law truly made enforcement of restraining orders *mandatory*") (emphasis in original). Specifically, despite probable cause to believe an assault, menacing, or strangulation has occurred, an officer likely has some discretion to determine that the circumstances of the situation weigh against arrest in a particular domestic violence instance. *Id.* at 761-62.

For example, if the suspected alleged or potential assailant was not actually present and his or her whereabouts were unknown there is a practical need for officer discretion. *Id.* at 762. A mandatory duty to arrest in that circumstance is completely open-ended in terms of priority, duration, and intensity. *Donaldson v. City of Seattle*, 831 P.2d 1098, 1104 (1992) ("There is a vast difference between a mandatory duty to arrest [an assailant who is present] and a mandatory duty to conduct a follow-up investigation [to locate an absent assailant] . . . . A mandatory duty to investigate . . . would be completely open ended as to priority, duration and intensity"). If there were no officer discretion, an officer could theoretically be forced to continue searching for an assailant or alleged assailant for days to arrest him or her to the detriment of other necessary police work. The officers charged with arresting an assailant or alleged assailant in a domestic violence situation where there is probable cause must have some discretion to prioritize the importance of an arrest given the circumstances. Accordingly, because police officers have some discretion whether to grant or deny the benefit conferred in ORS 133.050, it is not a protected entitlement that creates a special relationship entitled to due process protections. *Castle Rock*, 545 U.S. at 756.

PAGE 10 -- ORDER AND OPINION

Moreover, even if it were, the indirect nature of the benefit is fatal to Plaintiff's due process claim. *Id.* at 767.

### C. Due Process protections based on a state created danger.

Plaintiff asserts that Defendant Officers created a danger triggering Ms. Van Patten's entitlement to protections under the Due Process Clause. Specifically, Plaintiff asserts Defendant Officers "took affirmative actions" that placed Ms. Van Patten in physical danger when they choose to ignore "a set of provocative and dangerously excalating [sic] facts [and leave Ms. Van Patten] with her abuser." (Plf.'s Resp. to Defs.' Mot. Summ. J. at 61, Dkt No. 35). Plaintiff further states that Defendant Officers "had weeks of prior notice and requests by Mrs. Van Patten." (*Id.*).

In making this contention, Plaintiff relies on cases in which the Ninth Circuit has held state officials liable for their roles in creating or exposing citizens to danger they otherwise would not have faced. For example, in *Wood v. Ostrander*, 879 F.2d 583 (9th Cir, 1989), the Ninth Circuit found state officials placed plaintiff in danger she otherwise would not have faced when a state trooper impounded the car in which she was a passenger and left plaintiff alone and stranded in a high-crime area late at night. *Id.* at 589-90. Plaintiff was raped as she made her way home. *Id.* 586. Similarly, in *Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006), the Ninth Circuit found an officer created an "actual, particularized danger [plaintiff] would not otherwise have faced" when he informed a neighbor of plaintiff's accusations of child abuse without warning her first. *Id.* at 1063. The court concluded the officer "created an opportunity for [the neighbor] to assault [the plaintiff] that otherwise would not have existed." *Id.* (internal quotations and citations omitted).

The facts of this case, however, do not establish Defendant Officers "create[d] or expose[d] [Ms. Van Patten] to a danger which . . . she would not have otherwise faced." *Kennedy*, 439 U.S.

PAGE 11 – ORDER AND OPINION

at 1062 (internal citations and quotations omitted). The Defendant Officers responded to a 911 call alleging Mr. Van Patten had hit Ms. Van Patten during an argument. (Conde. Decl., Ex. 22, p. 3, Dkt No. 36-23). When the Defendant Officers arrived, they found Ms. Van Patten outside the house in her driveway and "visibly shaken and crying." (*Id.*). Ms. Van Patten stated she was afraid of her husband, but denied any physical violence occurred. (*Id.*). Ultimately, the Defendant Officers did not arrest Mr. Van Patten and left the Van Pattens exactly where they had been before the Defendant Officers arrived: together in their home. (*Id.*). Nothing in these facts interpreted in a manner most favorable to Plaintiff shows that the Defendant Officers left Ms. Van Patten in a situation that was more dangerous than the one in which they found her. *Kennedy*, 439 F.3d at 1062 ("In examining whether an officer affirmatively places an individual in danger, . . . we examine whether the officer[ ] left the person in a situation that was more dangerous than the one in which they found him"); *see also DeShaney*, 489 U.S. at 201 (finding no Fourteenth Amendment liability when the state was aware of the dangers citizen faced but "played no part in their creation, nor did it do anything to render him any more vulnerable to them"). Accordingly, Plaintiff's assertion that Defendant Officers created a danger triggering Ms. Van Patten's entitlement to protections under the Due Process Clause fails.

Because the court finds that the Defendant Officers had no affirmative constitutional duty to provide adequate protection to Ms. Van Patten, it is not necessary to reach the question of whether Defendant Officers' conduct evinced the state of mind necessary to support a due process claim.

II. The Children's Substantive Due Process Claim.

Ms. Van Patten's children allege that Defendants' actions led to the murder of their mother by a third-party and unlawfully deprived them of the right to their mother's companionship. (Am.

PAGE 12 – ORDER AND OPINION

Compl., ¶¶ 43-44). The Ninth Circuit has recognized a child's interested in the continued companionship and society of their parent is a cognizable liberty interest under the Due Process Clause. *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987) ("We now hold that this constitutional interest in familial companionship and society logically extends to protect children from unwarranted state interference with their relationships with their parents"). Defendants rely on an incorrect reading of *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159 (9th Cir. 2013), in support of their assertion that Plaintiff's loss of companionship fails because the right to companionship extinguishes when the child reaches the age of majority. *Id.* at 1169. *Johnson*, however, recognizes that past circuit decisions "have recognized a parent's right to a child's companionship without regard to the child's age." *Id.* Indeed, *Johnson* affirmed the circuit's view that "the familial relationship, and not the more narrow custodial interest of the parents, give rise to the due process action." *Id.* (internal quotations and citations omitted).

Plaintiff's companionship claim, however, fails for other reasons. The lynchpin of a Fourteenth Amendment companionship claim is an allegation state actors violated the right to such companionship by "act[ing] with a purpose to harm" the parent "that is unrelated to legitimate law enforcement objectives" or by acting with "deliberate indifference." *Porter v. Osborne*, 546 F.3d 1131, 1137, 1140 (9th Cir. 2008). The facts construed in a light most favorable to Plaintiff neither support an allegation that Defendant Officer's acted with an intent to harm Ms. Van Patten, nor, as set forth in the analysis above, can they support a finding by a reasonable fact finder that Defendant Officers acted with deliberate indifference in violation of the Fourteenth Amendment.

### III. Plaintiff's State Law Claims.

The court has pendant jurisdiction over Plaintiff's state law claims for statutory liability under ORS 133.055 and negligence per se. (Am. Compl., ¶ 4, Dkt No. 3). It is within the court's

discretion to retain jurisdiction over the pendant claims even if the federal claims over which it had jurisdiction are dismissed. *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995). In determining whether to retain jurisdiction the court weighs factors including economy, convenience, fairness, and comity. *Id.*

After weighing these factors and the desire expressed by both parties at oral argument that the court retain jurisdiction of the pendant state law claims, the court concludes it should retain jurisdiction of these claims. Since Plaintiffs filed this case, the court has invested significant resources in this case, including the time spent reviewing the parties' summary judgment briefing and exhibits, holding a hearing on the summary judgment motion, and preparing this Opinion and Order. After expending this effort, it would be a waste of judicial resources to return the pendant claims to state court. *Schneider v. TRW, Inc.*, 938 F.2d 986, 994 (9th Cir. 1991); *see also, Otto v. Heckler*, 802 F.2d 337, 338 (9th Cir. 1986) ([t]he district court, of course, has the discretion to determine whether its investment of judicial energy justifies retention of jurisdiction"). Accordingly, the court finds retention of the pendant claims conserves judicial resources and avoids multiplicity of litigation.

### A. Probable cause to arrest under ORS 133.055.

At oral argument on Defendants' summary judgment motion, the parties stipulated that Oregon's probable cause standard applied in this case. Under Oregon law, probable cause consists of two parts: "an officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure, and this belief must be objectively reasonable in the circumstances." *State v. Owens*, 302 Or. 196, 204 (1986). In determining whether the officer's probable cause belief was objectively reasonable, the court looks at the "totality of the

circumstances" including the officer's training and experience. *State v. Vasquez-Villagomez*, 346 Or 12, 23 (2009).[3]

Defendants assert Defendant Officers reasonably determined they lacked probable cause to arrest Mr. Van Patten when they responded to the domestic violence call at the Van Patten residence on May 26, 2013. Under ORS 133.055, when a police officer "responds to an incident of domestic disturbance and has probable cause to believe that an assault has occurred between family or household members . . . or to believe that one such person has placed the other in fear of imminent serious physical injury, the officer shall arrest . . . the alleged . . . or potential assailant." ORS 133.055 (2)(a). Here, the undisputed facts show Defendant Officers knew the Van Pattens' neighbor told the 911 dispatcher that she heard Ms. Van Patten say "stop hitting me" and that Ms. Van Patten was outside "visibly shaken and crying" when they arrived. (Conde Decl., Ex. 22, p. 3, Dkt No. 36-23). Although she denied any physical violence, Ms. Van Patten told Defendant Officers she was afraid of her husband. (*Id.*). Defendant Officers also knew that, earlier in the week, Mr. Van Patten learned Ms. Van Patten was having an affair. (*Id.*). Mr. Van Patten also told Defendant Officers that Ms. Van Patten told him the night before that she wanted a divorce and that he was upset because she told him that she was only willing to spend one more night in his bed. (*Id.*).

---

[3] The court is mindful that many Oregon cases state that whether probable cause exists to support an arrest is a question of law, not fact. *See, e.g., Vasquez-Villagomez*, 346 Or. at 23; *State v. Miller*, 345 Or. 176, 187 (2008). Those cases considered the probable cause question in the context of a criminal prosecution such as a motion to suppress evidence. In the context of a motion for summary judgment in a civil case, however, the authenticity of a dispute turns on whether a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Accordingly, in this case whether probable cause existed is a question of fact not law.

PAGE 15 – ORDER AND OPINION

Based on these facts, the dispute turns on whether Defendant Officers reasonably determined that Mr. Van Patten had not assaulted Ms. Van Patten or placed her in fear of imminent serious physical injury. Because a reasonable jury could find for Plaintiff on this issue, the Court denies Defendants' motion for summary judgment on Plaintiff's state law statutory negligence and negligence per se claims.

B. *Liability under ORS 133.055 statutory liability claim.*

Defendant asserts even if there is a dispute of material fact regarding probable cause to arrest under the statute, Defendants are still entitled to summary judgment on Plaintiff's statutory liability and negligence per se claims because ORS 133.055 does not create a cause of action. In *Nearing v. Weaver*, 295 Or. 702 (1983), the Oregon Supreme Court considered whether ORS 133.310, the statute authorizing arrests without warrants, created a legal right independent of a negligence action for failure to enforce a restraining order. *Id.* 295 Or. at 140-144. The Oregon Supreme Court concluded that it did. *Id.* at 140. And, in its analysis, the Court recognized that "ORS 133.310(3), and its companion, ORS 133.055, are unique among statutory arrest provisions because the legislature choose mandatory arrest as the best means to reduce recurring domestic violence." *Id.* at 143. The Court added that these two statutes "identify with precision when, to whom, and under what circumstances police protection must be afforded." In light of *Nearing*, the court finds that Ms. Van Patten fell within the class the legislature intended to protect when enacting ORS 133.055 and the harm that befell her is the kind the statute sought to protect. *Stachiewicz v. Mar-Cam Corp.*, 259 Or. 583, 586 (1971). Plaintiff's statutory liability and negligence per se claims may move forward.

\\\\\

\\\\\

*Conclusion*

For the reasons stated above, Defendants' Motion for Summary Judgment (Dkt No. 27) is granted in part and denied in part. Plaintiff's Fourteenth Amendment and *Monell* claims are dismissed with prejudice. The court retains jurisdiction of Plaintiff's pendant state law claims and denies Defendants' motion for summary judgment on these claims.

DATED this 11th day of October, 2016.

JOHN V. ACOSTA
United States Magistrate Judge