**Christopher A. Gilmore**, OSB No. 980570
Sr. Assistant County Counsel
chris_gilmore@co.washington.or.us
OFFICE OF WASHINGTON COUNTY COUNSEL
161 NW Adams Avenue, Suite 305, MS #24
Hillsboro, OR 97124
Phone (503) 846-8747
Fax (503) 846-8636
Attorney for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MELISSA VAN PATTEN, Personal Representative for the Estate of Melinda Van Patten,<br><br>                    Plaintiff,<br><br>   v.<br><br>WASHINGTON COUNTY, by and through the Washington County Sheriff's Office,<br><br>                    Defendant. | No. 3:15-cv-00891-AC<br><br>**DEFENDANT'S TRIAL BRIEF** |

# TABLE OF CONTENTS

I.   CONCISE SUMMARY OF FACTS ................................................................................... 1

II.  LEGAL ISSUES .................................................................................................................. 4

      A.  Bifurcation ................................................................................................... 5

      B.  Probable Cause............................................................................................. 5

      C.  Comparative Fault........................................................................................ 8

# TABLE OF AUTHORITIES

*Baccelleri v. Hyster Co.,*
287 Or. 3 (1979) ............................................................................................................ 8

*Miller v. Pacific Trawlers, Inc.,*
204 Or. App 585 (2006) ............................................................................................... 9

*Nearing v. Weaver,*
295 Or. 702, 709 (1983) ............................................................................................... 8

*Sandford v. Chevrolet Division of General Motors,*
292 Or. 590 (1982) ....................................................................................................... 8

*State v. Bonilla,*
358 Or. 475, n. 10 (2015) ............................................................................................. 7

*State v. Medinger,*
235 Or. App. 88, 92 n. 1, 230 P.3d 76 (2010) .............................................................. 5

*State v. Miller,*
345 Or. 176 (2008) ....................................................................................................... 6

*State v. Owens,*
302 Or. 196, 204, 729 P.2d 524 (1986) ........................................................................ 5

Defendant submits the following Trial Brief consistent with Section V(A) of the Jury Trial Management Order:

I.    CONCISE SUMMARY OF FACTS

This case presents a single issue of whether Defendant had probable cause to arrest Kenneth Van Patten on May 26, 2013 and whether failure to do so caused the death of Melinda Van Patten. Defendant will offer testimony and evidence at trial that the deputies in this case acted consistent with their training, that their subjective belief that there was no probable cause was reasonable, and that the objective evidence is consistent with their decision not to arrest Kenneth Van Patten.

Defendant will offer testimony that the deputies in this case received training for purposes of making a determination of whether to arrest Kenneth Van Patten under ORS 133.055. Corporal Kip Branch provided the training during the time that Deputy Leanne Stoneberg and Deputy Dylan Leach were working for the Washington County Sheriff's Office and he is familiar with the standard and training provided to deputies that are used in determining probable cause. He was responsible for training new deputies on probable cause, the restraints on an arrest provided for under the Fourth Amendment, the mandatory arrest statutes, and the elements of the crimes that are the subject of a mandatory arrest. He will testify about the principles of probable cause, how they are defined, and how they are taught to deputies. He will testify that probable cause has two components, a subjective and an objective component. He will testify that the meaning of probable cause is that more likely than not a crime has occurred. Corporal Branch will testify that training includes a discussion of case law and factual scenarios to teach the deputies how to apply the probable cause standard to real life scenarios. He will

testify that deputies are taught that there is a broad spectrum of factual scenarios ranging from no evidence of a crime to actually seeing a crime committed under which the probable cause standard must be considered. He will testify that the deputies are trained that determining probable cause requires the exercise of discretion under the circumstances and that the standard is not clear and objective. He will also offer testimony on the training provided to deputies as it relates to the crimes of assault and menacing including factual scenarios that are used to illustrate those crimes.

Defendant will also call each deputy to the stand. Each officer will testify that they have reviewed the text of the statute and were familiar with the requirements for a mandatory arrest. They will testify that an arrest is mandatory only if they have a belief that more likely than not the crime of assault, menacing or strangulation is revealed during an investigation. They will testify that they understand the elements of the crimes of assault, menacing and strangulation and the type of evidence you are looking for when investigating those types of crimes. All three deputies will testify about their observations and information they learned during the investigation on May 26, 2013.

Deputy Leanne Stoneberg will testify that she was informed of a domestic violence incident through dispatch, that dispatch indicated a neighbor was talking to Melinda Van Patten over the phone when she heard her say stop hitting me and the line went dead. Deputy Leanne Stoneberg will testify that she responded to the call and that her immediate priority was to get on the scene to make sure everyone is safe. She will testify that once people are safe and secure on the scene the investigation is to determine whether the information provided by dispatch is correct. Deputy Leanne Stoneberg will testify that she was riding with Reserve Deputy Melinda

Purvis. She will testify that a reserve deputy is under the supervision of a deputy at all times and that she was the primary deputy responding to the call.

Deputy Leanne Stoneberg will testify that she arrived that morning at approximately 9:51 am and met with Deputy Dylan Leach who was already on the scene. All domestic violence calls require two deputies to respond for officer safety. The deputies then proceeded up the gravel driveway to the residence at 5355 SW River Road. The first contact during the investigation was with Melinda Van Patten who was in the driveway and was shaking and visibly upset. The deputies will testify that they did not observe any injuries on Melinda Van Patten at that time so there was no need to request a medical response on the scene. After securing Melinda Van Patten in the driveway the officers then proceeded to contact Kenneth Van Patten in the house.

The deputies met Kenneth Van Patten at the door and entered the home to question him separately from Melinda Van Patten. In the kitchen the deputies questioned Mr. Van Patten. Deputy Stoneberg will testify that Kenneth Van Patten stated that he had been arguing with his wife and that be believed she was having an affair with their roommate, Glen Hamilton. He stated that in the morning he had gone out for some errands and when he returned his wife was in the driveway. He said he told her to move out of the way or he would hit her. He then stated that he did not actually attempt to hit her and that he did not hit or shove his wife in anyway. Deputy Stoneberg will testify that during the discussion she did not notice any physical injuries on Mr. Van Patten and no evidence in the home to indicate that a physical struggle occurred.

Deputy Stoneberg will testify that she went back outside and contacted Melinda Van Patten. Melinda Van Patten was interviewed separately. She stated that Mr. Van Patten did not hit or shove her in any way and that he did not hit her with his car. At this point Deputy

Stoneberg explained to Melinda Van Patten that the deputies did not have a basis for arresting her husband. In frustration Melinda Van Patten said: "The next time you see this face I'll be dead." The officers then responded by encouraging the parties to separate by providing Melinda Van Patten the keys to the car. Both Deputy Stoneberg and Reserve Deputy Melinda Purvis concluded there was no probable cause for an arrest notwithstanding this statement of general fear. Deputy Stoneberg will explain that this statement alone was not sufficient basis for concluding there was a specific, imminent threat of serious physical injury.

The deputies will testify that there was insufficient evidence of an assault. That the information provided by dispatch was refused by both Kenneth and Melinda Van Patten. That neither one admitted that any type of pushing, shoving or hitting occurred. These statements together with the lack of any evidence of a physical injury causing substantial pain or any limitations on Melinda Van Patten's physical condition precluded any arrest for the crime of assault. The deputies will testify that there was insufficient evidence for the crime of menacing. Deputy Stoneberg will testify that the general statement "the next time you see this face I'll be dead" did not give her any indication of a specific threat or when it would occur. The deputies will testify that there was insufficient evidence to warrant a mandatory arrest under ORS 133.055.

II.   LEGAL ISSUES

There are several novel legal issues in this case. Both parties have diligently conferred and have been unable to resolve the issues. Those issues concern: (1) bifurcation of liability from damages, (2) the applicable standard for "probable cause", and (3) whether the comparative fault statute applies in this case.

A.   Bifurcation

Defendant filed separately to bifurcate liability from damages in this case. The arguments will not be repeated except to say that separate phases of the trial will substantially reduce the time involved in this case to the extent that liability is decided in favor of Washington County.

The liability phase concerns only the conduct of the deputies on May 26, 2013 and whether they had probable cause to arrest. That involves the testimony of five (5) witnesses who were present on the scene, the three (3) deputies, Glen Hamilton, and Nancy Amrein. Some of those witnesses will overlap with each party's case-in-chief. It is anticipated that after empaneling a jury and delivering opening arguments this case could be tried and decided by the jury in two days. There are significant benefits of efficiency as well as the clear prejudice that would result if the case is tried together.

B.   Probable Cause

The parties have been working diligently to reach an understanding on an instruction for probable cause. The entire case turns on the framing of this instruction. Plaintiff's belief that the standard provided in Oregon should be modified in this case to focus solely on the objective component of probable cause is misplaced. The state law is clear that there are two components:

> "[a]n officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure, and this belief must be objectively reasonable in the circumstances."

*State v. Owens*, 302 Or. 196, 204, 729 P.2d 524 (1986). The state standard for probable cause is more stringent than the federal constitutional standard. *State v. Medinger*, 235 Or App 88, 92 n 1, 230 P3d 76 (2010). That means that it is more than just a test of reasonableness; the

subjective component must be given some weight. In fact, the case law indicates that the subjective component is an independent requirement. In *State v. Miller*, 345 Or. 176 (2008) the Oregon Supreme Court recognized the long-standing subjective component of probable cause as follows:

> "However, those cases also demonstrate that, long before *Owens,* the court defined the mechanics of probable cause using the same components that *Owens* would set out again some 50 years later; *i.e.,* a subjective component coupled with an objective basis for concluding that there was probable cause to arrest. Consequently, although *Owens* did not expressly draw on *Lee* and *Duffy* in its discussion of probable cause, those prior decisions nevertheless make it difficult to view *Owens*—as the state would have us do now—as having announced a new paradigm for probable cause analysis. As we explain below, the court's use of the term "subjective belief" in *Owens* was not intended to establish a new, more rigorous probable cause standard for warrantless arrests but, instead, was intended to confirm that an officer's subjective state of mind remains an important part of the Oregon constitutional analysis."

Thus prior efforts to eliminate the subjective component of probable cause have been clearly rebuffed by Oregon's highest court. The court then went on to state that "the probable cause inquiry is satisfied if the officer believes that he or she has lawful authority to restrain the individual's liberty." With that the court in *Miller* then reviewed the objective facts to determine whether there was sufficient evidence to support the subjective component of probable cause

Page 6 – DEFENDANT'S TRIAL BRIEF

despite the officer's own statement that he lacked probable cause. Thus a proper reading of *Miller* is that the subjective belief must also be supported by objectively reasonable facts.

With that said the subjective component is not entirely subsumed by the inquiry into whether there are objective facts to support it. Thus, in a case where there are objective facts that can be interpreted as either supporting probable cause <u>or not</u>, the grey area cases if you will where reasonable minds may differ, those cases must be decided in favor of the officer. Without it there is no meaning to the subjective component of the probable cause test and each case would turn simply on whether there are objective facts to support someone else's determination of probable cause after-the-fact. The decision of the officers may not be looked at in hindsight but must instead be based on the information available at the time of the decision. *State v. Bonilla*, 358 Or. 475, fn 10 (2015). It is not a substitution of opinion but rather a confirmation of the reasonableness, or unreasonableness, of the officer's decision.

Clarity on this point is important in this case. Say for example a juror believes that the dispatch information conveyed to the officers regarding Mr. Van Patten hitting Melinda Van Patten is adequate to support probable cause even if that same juror recognizes that the officer's decision was also reasonable and consistent with her experience and training. To find against the officers in that situation would be directly in contrast to the subjective component requirement of probable cause in Oregon and would allow a jury to later substitute their own point of view for that of the deputy. The jury should be clearly instructed on this issue to avoid this result. Each person's assessment of probability may differ – the mandatory arrest statute does not change that – ultimately the question is whether the officer's subjective belief was reasonable based on the objective evidence, not whether a juror can come up with a different point of view after-the-fact.

C.  Comparative Fault

The final question at issue in this case is whether comparative fault applies in the context of a claim for violation of a statutory duty of care. This is addressed in large part in the objections to the jury instructions but warrants further analysis.

The most instructive case on this question is *Nearing v. Weaver*, 295 Or. 702, 709 (1983). In that case the Oregon Supreme Court concluded that a civil remedy exists in those cases where an officer fails to enforce a restraining order in violation of ORS 133.310(3). This court in response to Washington County's Motion for Summary Judgment extended that same remedy to cases involving a failure to arrest under ORS 133.055. Although it is not directly addressed in *Nearing* the concurring opinion by Judge Jones states that "[a]ll other relevant negligence law would be applicable, including comparative fault if warranted by the facts." Based on this comparative fault is alive and well in the context of a case involving a statutory remedy.

There are several cases that permit application of comparative fault in cases involving strict liability. For example both *Baccelleri v. Hyster Co.*, 287 Or. 3 (1979) and *Sandford v. Chevrolet Division of General Motors*, 292 Or. 590 (1982) permitted application of comparative fault in a products liability case. The Oregon Supreme Court in *Baccelleri* made clear that "comparative fault is applicable to strict liability in tort." *Baccelleri* at 12 (1979). Subsequently in *Sandford* the Oregon Supreme Court further extended this holding and concluded that plaintiff's negligence was an appropriate consideration for determining the comparative fault of the parties in a products liability case. It is worth noting that the statute itself uses the terms fault as well as negligence depending on the case suggesting that comparative fault is broader than just comparing conduct of each party in a negligence case. There is no dispute in this case that Defendant has pled both facts and law as an affirmative defense in support of a claim of

comparative fault in this case.  Consequently it is appropriate, as it was in *Sandford*, for this court to submit that question to the jury.

This analysis is not limited to products liability cases.  In *Miller v. Pacific Trawlers, Inc.*, 204 Or.App 585 (2006) the Oregon Supreme Court again found that the comparative fault defense applied to this case involving an employer's violation of OSHA regulations.  The court instructed the jury that violation of the OSHA regulations was negligence.  Despite the regulatory violation the court nonetheless allowed the jury to consider comparative fault.

The same result is required in this case.  The reasoning in *Nearing* and other cases is clear the Oregon courts will apply comparative fault in cases involving a statutory violation.

DATED: June 5, 2017.

    *s/Christopher A. Gilmore*
Christopher A. Gilmore, OSB No. 980570
Sr. Assistant County Counsel
chris_gilmore@co.washington.or.us
Attorney for Defendant

Page 9 – DEFENDANT'S TRIAL BRIEF