UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MELISSA VAN PATTEN, Personal Representative for the Estate of Melinda Van Patten, | Case No. 3:15-cv-0891-AC |
| | OPINION AND ORDER |
| Plaintiff, | |
| v. | |
| WASHINGTON COUNTY, by and through the Washington County Sheriff's Office, | |
| Defendant. | |

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Melissa Van Patten ("Plaintiff") brings this lawsuit against defendant Washington County ("the County"). Plaintiff's sole remaining claim is for statutory liability under Oregon law. The County moves for separate trials of the liability and damages issues in this lawsuit. (ECF No. 62.) The court finds this motion appropriate for disposition without oral argument, pursuant to Local Rule of Civil Procedure 7-1(d)(1). Upon review of the parties' arguments and the evidence that Plaintiff intends to introduce at trial, the court denies the

/ / / / /

County's motion.[1]

*Background*

In 2013, Sheriff's Deputies Dylan Leach and Leanne Stoneberg and Reserve Deputy Melinda Purvis (collectively, "the Deputies"), employees of the County, responded to a domestic-violence call at the home of Melinda Van Patten and Ken Van Patten. *Van Patten v. Leach*, No. 3:15-cv-0891-AC, 2016 WL 5928801, at *1 (D. Or. Oct. 11, 2016). The Deputies did not arrest Ken Van Patten. *Id.* at * 2. On the following day, Ken Van Patten shot Melinda Van Patten twice, killing her, before committing suicide. *Id.* at * 1. Plaintiff, as personal representative of Melinda Van Patten's estate, initiated this lawsuit against the Deputies and the County, alleging claims under 42 U.S.C. § 1983 and Oregon tort law. (First Am. Compl. (ECF No. 1) ¶¶ 32–72.) The court granted partial summary judgment against Plaintiff. *Van Patten*, 2016 WL 5928801, at * 1. Plaintiff's only remaining claim is for statutory liability under ORS § 133.055, which mandates arrest under specific domestic-violence-related circumstances. The court held a scheduling conference on January 5, 2017, setting dates for trial and pretrial document filings. (ECF Nos. 59, 60.) Plaintiff's remaining claim is scheduled for a six-day jury trial, beginning on July 10, 2017. Initial pretrial documents were due on June 5, 2017. (Jury Trial Management Order (ECF No. 60), at 2.) The County did not raise the issue of bifurcation at the January 5 scheduling conference, or at any time prior to filing its motion to bifurcate on May 25, 2017. (ECF No. 62.) Plaintiff opposes the motion. (ECF No. 88.)

*Legal Standard*

Under Federal Rule of Civil Procedure ("Rule") 42(b), "the court may order a separate

---

[1] The parties have consented to jurisdiction by magistrate judge in accordance with 28 U.S.C. § 636(c).

trial of one or more separate issues, claims, crossclaims, or third-party" for "convenience, to avoid prejudice, or to expedite and economize" the proceedings. The drafters of the Federal Rules did not intend the routine bifurcation of trials. FED. R. CIV. P. 42(b) advisory committee's note to 1966 amendment. The moving party has the burden to prove that bifurcation is appropriate. *Benson Tower Condo. Owners Ass'n v. Victaulic Co.*, 150 F. Supp. 3d 1184, 1208 (D. Or. 2015) (Simon, J.) (citing *Clark v. I.R.S.*, 772 F. Supp. 2d 1265, 1269 (D. Haw. 2009)). The court has broad, discretionary authority to bifurcate claims or issues. *Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982).

*Analysis*

Few factual issues remain in this lawsuit. The County's liability turns first on what the Deputies knew when they decided to not arrest Ken Van Patten, and second on whether the facts known to the Deputies created probable cause to arrest Ken Van Patten under ORS § 133.055. Because Plaintiff's remaining claim asserts statutory liability, the only defenses available to the County are those available under the statute. *See Nearing v. Weaver*, 295 Or. 702, 709–10 (1983) (holding that, in a statutory-liability action, the only available defenses are those defenses available under the statute). Accordingly, any evidence must be relevant to what the Deputies knew when they responded to the Van Patten residence on the day in question.

The evidence relevant to damages is similarly limited. Plaintiff brings this claim under Oregon's wrongful-death statute, ORS § 30.020. Under ORS § 30.020(2), Plaintiff may recover only specific categories of damages on behalf of the Estate. Within those statutory limits, Plaintiff seeks damages for Melinda Van Patten's pain and suffering after being shot and before death, for funeral expenses, and for lost earning capacity. (First Am. Compl. ¶¶ 58–59.) Plaintiff also seeks damages for loss to the estate of Melinda Van Patten's companionship,

society, and familial presence. (*Id.* ¶ 60.)

The narrow remaining issues for trial limit the evidence the parties may offer in the upcoming trial. Nonetheless, the County contends that separating trial on damages and liability is necessary to avoid prejudice and juror confusion. The County relies on two categories of possible evidence to support bifurcation. First, the County suggests that Plaintiff will submit graphic evidence of the violent and gruesome nature of Mrs. Van Patten's murder and Mr. Van Patten's suicide. The County specifically references photographs and documentary evidence providing graphic detail of the murder–suicide. Next, the County argues that Plaintiff will seek to admit evidence of prior domestic-violence incidents within the family, which the Deputies had no knowledge of on the day in question. Such evidence, the County argues, will confuse the jury as to the proper scope of the probable-cause determination under ORS § 133.055. Plaintiff argues that limiting instructions would be sufficient to avoid any prejudice or jury confusion.

The court has the benefit of the parties' submission to the court of the evidence which they intend to introduce at trial. (*See* ECF Nos. 69, 74.) The parties filed their proposed exhibits after the County filed the pending motion. In consideration of the previously discussed evidentiary limitations and the evidence which Plaintiff intends to introduce at trial, the court concludes that bifurcation is unnecessary. The potential for prejudice and juror confusion which the County suggests is largely addressed by the limitation of relevance and the omission from Plaintiff's proffered exhibits of the most prejudicial potential evidence.

I.  Undue Prejudice.

The County first argues that Plaintiff will offer graphic evidence of the murder–suicide at the heart of this case, which might cause undue prejudice to the County. The evidentiary submissions by the parties are dispositive of this issue. Although the County identifies graphic

photographs and documentary evidence which Plaintiff might seek to admit, Plaintiff did not submit any such evidence in her pretrial filings, (*see generally* Pl.'s Ex. List (ECF No. 69)), nor will Plaintiff be permitted to amend her exhibit list to do so, because the court's Jury Trial Management Order explicitly warns that no amended pretrial documents will be permitted. (ECF No. 60,at 1.) Thus, the evidence which the County cites as justifying bifurcation is not in the case.

Plaintiff intends to elicit testimony from witnesses, including a witness to the murder–suicide, a detective who investigated the murder–suicide, and fifteen minutes of testimony from a deputy medical examiner regarding Mrs. Van Patten's death. (*See* Pl.'s Trial Witnesses (ECF No. 78), at 10.) Such testimony's prejudicial impact is subject to Federal Rule of Evidence 403(b) and limiting instructions to the jury. *See Hamm v. Am. Home Prod. Corp.*, 888 F. Supp. 1037, 1039 (E.D. Cal. 1995) (declining bifurcation where "any concerns about potential prejudice to the defendant may be directly addressed, and the prejudice cured, with appropriate limiting instructions").

In sum, Plaintiff will not offer graphic, visual evidence of Mrs. Van Patten's injuries. Nor will Plaintiff offer "a landslide of documents" regarding the murder–suicide. (Mot. at 4.) The evidence that will be admitted in this case is therefore demonstrably less prejudicial than the evidence alluded to in the County's motion. Relevance imposes a further restriction on Plaintiff's ability to elicit graphic testimony at trial. Some of the witness statements that the County identifies as prejudicial, such as Julie Van Patten and Plaintiff's proposed testimony about cleaning up blood after the murder–suicide, is not relevant to any recoverable item of damages. *See* OR. REV. STAT. § 30.020(2) (listing categories of recoverable damages); *Demars v. Erde*, 55 Or. App. 863, 866–67 (1982) (holding that Oregon's wrongful-death statute does not

allow recovery for a survivor's pain and suffering).

Furthermore, the prejudicial testimony regarding Mrs. Van Patten's last moments, though potentially relevant, is inadmissible based on the record before the court. To establish pain, suffering, and emotional distress after Mrs. Van Patten was shot and before she died, Plaintiff must first establish that Mrs. Van Patten was conscious after being shot. *See* OR. REV. STAT. 30.020(2)(b) (pain and suffering is recoverable only for "the period between injury to the decedent and the decedent's death); *see also Ghotra ex rel. Ghotra v. Bandila Shipping, Inc.*, 133 F.3d 1050, 1060–61 (9th Cir. 1997) (holding that, under an analogous federal wrongful-death statute, recovery of post-injury, pre-death pain and suffering requires evidence showing consciousness between injury and death). Based on her witness statements, Plaintiff will not introduce any eyewitness evidence showing that Mrs. Van Patten was conscious after the first shot. In the absence of eyewitness evidence, Plaintiff must show to a reasonable medical certainty that Mrs. Van Patten would have remained conscious after the first shot. But Plaintiff's witness statement for Deputy Medical Examiner Charles Lovato, the only medical professional listed as a witness, does not indicate that Dr. Lovato will testify regarding Mrs. Van Patten's consciousness after the first shot. (ECF No. 78, at 10.) Accordingly, the record before the court shows no basis for prejudicial testimony of post-injury and pre-death pain, suffering, or emotional distress.

The court must also balance prejudice to the County with the potential for prejudice to Plaintiff from separate trials. As the *Hamm* court noted, whether to inform a jury about bifurcation presents a dilemma. *Hamm*, 888 F. Supp. at 1039. Informing the jury that a verdict for plaintiff in the liability phase will cause subsequent proceedings "creates a subtle incentive for the jury to return a verdict for the defendants," causing prejudice to the plaintiff. *Id.*

Concealing the possibility of further proceedings from the jury creates an unfair surprise for the jury in the event of a plaintiff's verdict on liability. *Id.* This potential for prejudice to Plaintiff or unfair surprise to the jury further weighs against bifurcation based on undue prejudice.

II. Jury Confusion.

The County also argues that the potential for jury confusion merits separate trials on liability and damages because of potential evidence of past domestic-violence incidents. Here, the County argues that testimony regarding the history of domestic violence in the Van Patten family, if admitted as to damages, may confuse the jury as to the dispositive issue — whether the Deputies violated ORS § 133.055 when they decided not to arrest Mr. Van Patten. Evidence of prior domestic-violence incidents are not relevant to the narrow categories of damages that Plaintiff may recover under Oregon law. *See* OR. REV. STAT. § 30.020(2). To the extent evidence of prior incidents of domestic violence will be admitted at trial, such incidents would be admissible only to the extent ORS § 133.055 imposed a mandatory duty on the Deputies to investigate the "reasonably ascertainable . . . history of domestic violence between" Ken and Melinda Van Patten. OR. REV. STAT. § 133.055(2)(c)(B). As the court informed the parties at a hearing on June 15, 2017, the court will resolve the admissibility of incidents of prior domestic violence following supplemental briefing by the parties. (*See* ECF No. 102.) Prior incidents of domestic violence, if admissible, would be relevant only as to the County's liability. Jury confusion is unlikely under such circumstances. Because the evidence from which the County fears juror confusion either is not relevant or not unduly prejudicial, bifurcation is unnecessary.

III. Undue delay.

Finally, the County's delay in seeking bifurcation weighs against separate trials. *See Ryan v. City of Salem*, No. 3:16-cv-0565-AC, 2017 WL 2426868, at *3 (D. Or. June 5, 2017)

PAGE 7 — OPINION AND ORDER                                            [TJP]

(unexplained delay in moving to bifurcate weighs against granting motion). The County did not raise the issue of bifurcation at the pretrial scheduling conference on January 5, 2017, or at any time in the five months prior to filing its motion for bifurcation on May 25, 2017. Furthermore, the County filed its motion to bifurcate eleven days before initial pretrial documents were due, and one month before trial. The County does not offer, nor can the court discern, any basis for the County's delay in seeking bifurcation. Such delay is not harmless — ordering separate trials mere weeks before trial would be prejudicial to Plaintiff's preparation of her trial strategy. Such unexplained delay further supports denying Defendants' motion.

*Conclusion*

The County's Motion to Bifurcate (ECF No. 62) is DENIED.

IT IS SO ORDERED.

DATED this 16th day of June, 2017.

/s John V. Acosta
JOHN V. ACOSTA
United States Magistrate Judge